IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER BLAKE,

                                    OPINION AND ORDER

          Plaintiff,

                                    17-cv-220-bbc

    v.

CANDACE WARNER, TONI JOHNSON
and ANGELA STETTER,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff and prisoner Christopher Blake is proceeding on claims that defendants Candace Warner, Toni Johnson and Angela Stetter violated his rights under the Eighth Amendment by delaying his access to medication needed to treat his Churg-Strauss syndrome. Now before the court are the parties' cross motions for summary judgment, dkt. ##18, 24, as well as plaintiff's motion to amend his complaint to add claims against a new defendant, Jamie Barker. Dkt. #31. Because I conclude that plaintiff has failed to show that any of the defendants acted with deliberate indifference to his serious medical needs, I am granting defendants' motion and denying plaintiff's motion for summary judgment. Additionally, I am denying plaintiff's motion for leave to amend his complaint because the request comes too late in the case and because the record does not support a deliberate indifference claim against Barker.

From the parties' proposed findings of fact and the record, I find the following facts

1

to be material and undisputed unless otherwise noted.

UNDISPUTED FACTS

A. The Parties and Background

At all times relevant to this case, plaintiff Christopher Blake was an inmate at New Lisbon Correctional Institution in New Lisbon, Wisconsin, where all defendants worked. Candace Warner was New Lisbon's Health Services manager at the relevant time. Toni Johnson and Angela Stetter were registered nurses who worked in the Health Services unit.

In January 2013, plaintiff was given a diagnosis of Churg-Strauss syndrome at the University of Wisconsin hospital in Madison, Wisconsin. Churg-Strauss syndrome is a rare and incurable disorder marked by blood vessel inflammation. It can cause a variety of symptoms, some of which are mild and others that may be severe or life-threatening. The most common symptom is asthma. After plaintiff received his diagnosis, he was sent to the Dodge Correctional infirmary for 30 days to recover. On February 1, 2012, plaintiff was transferred to New Lisbon. When he arrived, the Health Services unit was informed of the seriousness of plaintiff's Churg-Strauss syndrome and the medications he needed to prevent inflammations.

In December 2013, plaintiff had a follow-up appointment at the University of Wisconsin Rheumatology Clinic. At that time, plaintiff was taking 24 different medications, including montelukast, which is an anti-inflammatory medication that can treat allergies and asthma. Plaintiff was also taking prednisone, a steroid, and mycophenolate, an

2

immunosuppressive. The mycophenolate was helping plaintiff, but he had "suboptimal" control of his severe asthma symptoms and his asthma had been recently exacerbated by bronchitis, which had been treated with azithromycin, an antibiotic, and an increase of the prednisone. The consulting UW provider recommended that plaintiff be scheduled for a follow-up appointment with his allergist and that he return for a follow-up in the Rheumatology Clinic in six months.

B. Plaintiff Receives Prescription for Clindamycin

On February 5, 2014, plaintiff's provider at New Lisbon sent him to the Black River Falls Memorial Hospital emergency room for inflammation, coughing, difficulty breathing, yellow phlegm, cold chills and back pain from coughing. Plaintiff underwent blood tests and a chest xray. The treating emergency room doctor recommended increasing plaintiff's prednisone. He also recommended that plaintiff complete a 10-day course of clindamycin, an antibiotic, to help with his inflammation. When plaintiff returned to New Lisbon, the on-call physician approved the emergency room doctor's recommendations and a nurse transcribed the order at around 6:00 p.m. on February 5, 2014.

The transcribing nurse, Jamie Barker, dispensed to plaintiff a 5-day supply of clindamycin from the prison's medication room. She told plaintiff the remaining 5 days would be ordered. Barker noted in plaintiff's records that the 5-day supply had been issued by writing "dispensed 30 tabs of 150mg" in the left hand column next to the prescriber's order. Barker also filled out a patient medication profile form showing that the thirty 150-

3

milligram tablets had been issued. Barker reviewed the new medication orders with plaintiff and noted that plaintiff would be seen by a nurse practitioner at the prison the next day. However, Barker failed to send an order for the remaining 5-day supply to the pharmacy. She also did not enter any note in the prescriber's orders stating that order had been sent to the pharmacy and she did not make a separate entry in the patient medication profile stating that a request for the remainder of the prescription had been sent to the pharmacy. Such an entry would usually be made by stating that the medication was "TBI" meaning "to be issued" to the patient when received from the pharmacy. Because Barker did not send the order to the pharmacy, the medication was not listed in the "TBI book," which is a log of prescription requests that are pending at the pharmacy.

The next day, February 6, plaintiff was seen in person by a nurse practitioner and had a "telemed" appointment with his allergist. The allergist recommended slowly tapering the prednisone dose; adding one puff daily of tiotropium (Spiriva), which is a bronchodilator; completing the course of clindamycin as well as a course of azithromycin; and being scheduled for a follow-up in 4 months. These recommendations were transcribed by the physician at New Lisbon later on February 6, at which time it was noted that the Spiriva, which requires authorization from Bureau of Health Services administrators, had been approved and ordered from the pharmacy.

On February 11, 2014, plaintiff had still not received the next 5-day supply of clindamycin, so he submitted a medical refill form for it. Defendant Johnson received plaintiff's refill form the next day, February 12. Johnson returned the refill request to

4

plaintiff on February 12 with a box checked stating "Can't be filled. Submit a HSR [Health Services Request form] if appointment wanted" and a handwritten note stating "No current order."

Defendant Johnson does not recall reviewing the refill request in 2014, but her training would have been to review the medication profile, TBI book and prescriber's orders. Because Nurse Barker, did not send an order for the second 5-day supply to the pharmacy, after transcribing the original order for clindamycin, the TBI book had no entry showing pending order for clindamycin for plaintiff. For the same reason, the medication profile did not have an entry indicating that the second 5-day supply was "TBI," which would have been a clear indicator to Johnson that plaintiff had a pending order. However, a careful reading of the medication profile would have shown both that there was an order for 10 days of clindamycin and that only half of the total prescription had actually been issued. Johnson did not notice this, so she mistakenly concluded that plaintiff had no current order for the requested medication.

On February 14, 2010, plaintiff submitted a health service request stating: "I need to see a nurse. It [is] about medications." The request was received by the Health Services unit on February 15 (a Saturday) and reviewed and responded to by defendant Stetter the same day. Stetter was the only nurse at the prison at the time. Because plaintiff's request did not describe any symptom and simply said he wanted to talk to a nurse about medications, Stetter scheduled plaintiff for sick call the following Monday, February 17.

Defendant Stetter saw plaintiff on February 17. Plaintiff told Stetter that he had not

5

received all of his clindamycin and felt "like [his] lungs [were] filling up." Stetter noted that plaintiff was supposed to receive a 10-day supply of clindamycin, but had only received a 5-day supply, and had been without this medication "for 5 days now." During the assessment, plaintiff became very congested and was having respiratory distress. Stetter summoned New Lisbon's physician, Dr. Lewandowski. Plaintiff was given a dose of his newly-prescribed bronchodilator, Spiriva. Dr. Lewandowski told plaintiff his congestion could have been the result of not finishing his antibiotic. Lewandowski then entered a new order for a different antibiotic, levofloxacin (Levaquin), in case of antibiotic resistance, and because of the possibility that plaintiff had developed pneumonia. Dr. Lewandowski also increased the Mucinex that plaintiff was already taking. Stetter educated plaintiff regarding use of the new Spiriva and noted that he would be seen for a follow-up appointment with nursing staff in one week.

On February 20, 2010, plaintiff saw Dr. Lewandowski and reported he was "doing a lot better" and had "less junk in [his] lungs." Plaintiff reported being able to walk to the Health Services unit without shortness of breath, and being able to do his job as a "runner." Dr. Lewandowski noted improvement from the recent exacerbation, continued the course of treatment and ordered a follow-up with her in 2 months. Plaintiff was also seen by nursing staff on February 24, at which time it was noted that he had improved.

### C. Plaintiff Requests Refill of Montelukast Prescription

On March 10, 2010, plaintiff submitted another medication supply refill request, this

time requesting refills of six medications, including montelukast, an asthma medication. At the time he submitted the request, plaintiff had six doses of montelukast remaining.

The Health Services unit received the request on March 11, 2010, and defendant Johnson responded. Johnson noted that as of March 14, five medications had been dispensed to plaintiff and the montelukast had been ordered. Defendant Stetter had actually processed the request for montelukast by sending an order to the Department of Corrections' central pharmacy on March 11. Central pharmacy generally processed prescriptions within one to three days, so there should have been sufficient time for central pharmacy to process the montelukast prescription before plaintiff ran out of medication. At times, central pharmacy gets behind in processing orders and Health Services staff can order prescriptions from a local pharmacy. However, when Stetter submitted the prescription request for montelukast, she had received no indication that central pharmacy was behind on orders.

On March 19, 2010, plaintiff had still not received his montelukast refill. Plaintiff submitted a health service request stating that as of the day before, March 18, his lungs "seem to be filling with liquid. . . again." At this point, plaintiff had been without his montelukast for three days. Defendant Nurse Stetter received the health service request on March 20 and saw plaintiff the same day. Plaintiff reported at the time he was "using everything" without relief and he was having difficulty talking because he was wheezing, was short of breath and had mucus on his lungs. Stetter called Dr. Lewandowski, who then sent plaintiff to the Mile Bluff Medical Center to be assessed regarding possible "pneumonia vs. bronchitis."

7

Doctors at Mile Bluff treated plaintiff with multiple nebulizer treatments and a dose of montelukast. Mile Bluff staff reported that plaintiff had had an acute exacerbation of asthma and recommended that he take a higher dose of prednisone, be seen at the prison clinic in the "next couple of days" and "resume taking montelukast daily as soon as possible."

When plaintiff returned to the prison, Dr. Lewandowski prescribed a 5-day course of azithromycin for bronchitis, and included a note stating "obtain from local," meaning from the local pharmacy. There is no indication in the medical records that plaintiff developed pneumonia. Plaintiff's montelukast prescription arrived at the prison on March 21, 2010, and plaintiff received a dose on the morning of March 22, 11 days after his refill request and 5 days after his last dose.

At a follow-up with his allergist a couple months later, plaintiff reported significant improvement in his coughing, wheezing, and breathing difficulty. It was noted that plaintiff had had no viral colds or antibiotic use since March 2010.

OPINION

Plaintiff was granted leave to proceed on the following claims under the Eighth Amendment:

(1) in February 2014, defendant Johnson refused to reorder plaintiff's medication for his condition before the medication ran out;

(2) in February 2014, defendant Stetter refused to see plaintiff for two days after his medication ran out; and

8

(3) in March 2014, defendant Johnson again refused to reorder plaintiff's medication before it ran out; and

(4) defendant Candace Warner failed to take proactive steps to order sufficient medication for plaintiff's Churg-Strauss Syndrome.

To prevail on a claim for inadequate medical care under the Eighth Amendment, plaintiff must show that a prison official was "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable measures. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). For purposes of summary judgment, defendants concede that plaintiff's Churg-Strauss Syndrome presented a serious medical need, so I need not address that issue. King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012). Defendants argue that plaintiff's claims fail because he cannot establish that any defendant was deliberately indifferent to his serious medical need. I address plaintiff's claims against each defendant below.

A.  Defendant Nurse Johnson

Plaintiff contends that defendant Johnson was deliberately indifferent to his serious medical needs on two occasions: on February 12, 2014, when Johnson failed to renew plaintiff's prescription for clindamycin after receiving plaintiff's medication refill request form, and on March 11, 2014, when Johnson failed to order montelukast from a local pharmacy in response to plaintiff's refill request. However, no reasonable jury could find

9

that Johnson was deliberately indifferent on either date.

After defendant Johnson received plaintiff's refill request on February 12, she likely reviewed plaintiff's medication profile, TBI book and prescriber's orders. Because the transcribing nurse had failed to send an order for the second 5-day supply of clindamycin to the pharmacy and failed to document the order in the TBI book, Johnson did not think there was any pending prescription for clindamycin. Johnson could have reviewed plaintiff's medication profile more carefully and realized that plaintiff had received an original prescription for 10 days of clindamycin, only half of which had been issued. However, "the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." Burton v. Downey, 805 F.3d 776, 785 (7th Cir. 2015) (citation omitted). "Negligence, gross negligence, or even 'recklessness' as that term is used in tort cases, is not enough." Id. (citing Shockley v. Jones, 823 F.2d 1068, 1072 (7th Cir. 1987)). In this instance, although Johnson made a mistake in failing to review plaintiff's records more carefully, nothing in the record suggests that her mistake was the result of deliberate indifference. Instead, the record shows that Johnson made an isolated mistake and, as numerous courts have found, an "isolated mistake does not allow a plausible inference of deliberate indifference." Robbins v. Waupun Correctional Institution, No. 16-CV-1128, 2016 WL 5921822, at *3 (E.D. Wis. Oct. 11, 2016) (collecting cases). See also Burton, 805 F.3d at 785 ("[W]ithout evidence that defendants acted with the requisite bad intent in delaying the dispensation of his medication, Burton's allegations are insufficient to sustain a deliberate indifference claim.")

10

With respect to plaintiff's March 2014 refill request, no reasonable jury could find that defendant Johnson was deliberately indifferent by failing to order montelukast from a local pharmacy. The undisputed facts show that although Johnson responded to plaintiff's refill request form, it was defendant Stetter, not Johnson, who made the decision to order montelukast from the central pharmacy, rather than from a local pharmacy. Additionally, there is no evidence to suggest that either Johnson or Stetter was aware at the time that it would take the central pharmacy 10 days to fill the request, as opposed to the one to three days it normally took to fill prescriptions. For example, plaintiff does not suggest that the central pharmacy routinely failed to fill his montelukast in a timely manner. Instead, plaintiff states in his brief that "all of [his] requests and concerns were answered for a full year prior to these two occasions," in February and March 2014, when his medications were delayed. Plt.'s Br., dkt. #37, at 2.

Plaintiff argues that both Johnson and Stetter knew that it was extremely important for him to take montelukast daily and thus, they should have taken steps to insure that there would be no gap in his medication. However, even if Johnson and Stetter should have anticipated the possibility of a gap in plaintiff's montelukast prescription, no evidence in the record suggests that their failure to do so was the result of deliberate indifference. Therefore, I will grant summary judgment to defendant Johnson on plaintiff's claims against her.

B.  <u>Defendant Stetter</u>

Plaintiff contends that defendant Stetter was deliberately indifferent to his medical needs on February 15, 2014, when she received plaintiff's health service request but did not meet with plaintiff for two days.  Plaintiff argues that Stetter should have responded immediately to his health service request because she knew about his serious health condition and how important his medication was for treating his symptoms.  However, no reasonable jury could conclude that Stetter was deliberately indifferent to plaintiff.  Plaintiff's request stated in full, "I need to see a nurse. It [is] about medications."  The request did not explain that plaintiff had not received his full dose of antibiotics, did not describe any symptoms and did not suggest that plaintiff's need was urgent.  At the time, plaintiff was taking numerous medications and his health service request gave no indication of which medications he was concerned about or why.  Thus, Stetter scheduled plaintiff for sick call so he could be seen by a nurse to discuss his medication.

When Stetter saw plaintiff on Monday, February 17 at sick call and realized the seriousness of his condition, she called a doctor immediately.  Plaintiff then received a new antibiotic prescription.  In short, Stetter responded to plaintiff's request in the manner she believed was appropriate.  Although plaintiff was understandably frustrated by the health services unit's failure to provide him the antibiotics he needed, nothing in the record suggests that Stetter was aware of the problem and consciously disregarded it.  Therefore, Stetter is entitled to summary judgment on plaintiff's deliberate indifference claims.

C. Defendant Warner

Finally, plaintiff contends that defendant Warner failed to take proactive steps to order sufficient medication for plaintiff's Churg-Strauss syndrome. However, this claim fails because plaintiff has produced no evidence showing that Warner was responsible for ordering medication or for any of the delays in plaintiff's receipt of his medication. Because Warner cannot be held liable for failing to address a problem about which she was unaware, she is entitled to summary judgment. Minix v. Canarecci, 597 F.3d 824, 833-34 (7th Cir. 2010) (defendant liable under § 1983 only if she has "personal involvement" in depriving plaintiff of his constitutional rights); Brooks v. Ross, 578 F.3d 574, 580 (7th Cir. 2009) (same).

D. Motion for Leave to Amend Complaint

After both plaintiff and defendants filed motions for summary judgment, plaintiff filed a motion requesting leave to amend his complaint to add a claim against Nurse Jamie Barker. Dkt. #31. Plaintiff says that, upon reviewing defendants' summary judgment materials, he learned that Barker was the transcribing nurse responsible for failing to order the second 5-day dose of clindamycin.

Although courts "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), plaintiff's request to amend comes too late in this case. In the May 18, 2017 screening order in this case, I noted that plaintiff had failed to name as a defendant any person responsible for ordering his medication other than defendant Warner. Dkt. #7 at

5. I noted that, "[i]f plaintiff learns during discovery that Warner was not involved or that other individuals were involved, plaintiff will need to amend his complaint to make the correction." Id. However, plaintiff did not conduct any discovery and did not attempt to determine the person responsible for ordering his medication until after both sides filed summary judgment motions. If I were to permit plaintiff to add Barker to the case at this stage, it would be necessary to set a new schedule for this case so that the parties could conduct discovery regarding Barker's actions and amend their summary judgment materials accordingly. In light of plaintiff's unexplained delay, I am not inclined to grant his request.

Moreover, plaintiff has not identified facts sufficient to state a deliberate indifference claim against Nurse Barker. Instead, the record shows that Barker acted negligently, at most, in failing to document plaintiff's prescription properly. Barker distributed five days of medication to plaintiff, reviewed the care plan with him and scheduled him to see a nurse practitioner. She failed to document his prescription correctly and failed to order the second 5-day supply. However, nothing in the record to suggests that Barker's errors amounted to deliberate indifference, as opposed to an isolated mistake. Therefore, I will deny plaintiff leave to amend his complaint to add a deliberate indifference claim against Barker.

ORDER

IT IS ORDERED that

1. Plaintiff Christopher Blake's motion to amend his complaint, dkt. #31, is DENIED.

2. Plaintiff's motion for summary judgment, dkt. #18, is DENIED.

3. The motion for summary judgment filed by defendants Toni Johnson, Angela Sttetter and Candace Warner, dkt. #24, is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 20th day of June, 2018.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge